UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| WILLIAM DAVID MISE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:15-CV-373-HBG |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 12]. Now before the Court is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 13 & 13-1] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 14 & 15]. William David Mise ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On February 20, 2014, the Plaintiff filed an application for disability insurance benefits ("DIB"), claiming a period of disability which began December 12, 2013. [Tr. 268]. After his application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr. 151]. On November 20, 2014, a hearing was held before the ALJ to review determination of the Plaintiff's claim. [Tr. 36-48]. During the hearing, the Plaintiff amended his alleged onset date to January 1, 2014. [Tr. 42]. A supplement hearing was held on March 26, 2015, in order to allow the Plaintiff to undergo two consultative examinations as well as obtain additional medical

evidence that was missing at the time of the first hearing. [Tr. 49-79]. Following the second hearing, the ALJ issued a decision on May 5, 2015, finding that the Plaintiff was not disabled. [Tr. 12-32]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-5]; thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted his administrative remedies, the Plaintiff filed a Complaint with this Court on June 5, 2015, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

I.  **ALJ FINDINGS**

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2. The claimant has not engaged in substantial gainful activity since January 14, 2014, the amended alleged onset date (20 CFR 404.1571 et seq.).
>
> 3. The claimant has the following severe impairments: degenerative disc disease, anxiety, asthma, diabetes mellitus and diabetic neuropathy, and depression (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can stand and/or walk for six hours in an eight-hour workday; sit for six hours in eight-hour workday; cannot climb ladders, ropes, or scaffolds; and he can only occasional climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. In addition, he can

2

Case 3:15-cv-00373-HBG   Document 16   Filed 06/28/16   Page 2 of 18   PageID #: 791

only have occasional exposure to extreme cold and heat; and can have no exposure to pulmonary irritants, proximity to moving mechanical parts, or working in high exposed places. Mentally, he has the ability to understand, remember, and carry out simple and detailed and complex instructions; is able to maintain concentration and persistence for the above tasks; is able to adapt to gradual and infrequent changes in the work setting; and is limited to work that requires occasional interaction with public, co-workers, and supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 12, 1974 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2014, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 17-26].

## II.    DISABILITY ELIGIBILITY

This case involves an application for DIB. An individual qualifies for DIB if he or she:

(1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for

DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); see 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4

5

(6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

IV. **POSITIONS OF THE PARTIES**

On appeal, the Plaintiff raises three allegations of error committed by the ALJ. First, the Plaintiff argues that he suffers from additional severe impairments beyond those found by the ALJ at step two. [Doc. 13-1 at 5]. Second, the Plaintiff contends that the ALJ failed to give appropriate consideration to the opinion of consultative examiner Jeffrey Uzzle, M.D. [Id. at 5-6]. Lastly, the Plaintiff maintains that the ALJ's credibility determination is not supported by substantial evidence. [Id. at 7-8].

The Commissioner submits that the ALJ properly evaluated the Plaintiff's impairments at

6

step two and took into consideration all of the Plaintiff's severe and nonsevere impairments at subsequent steps of the sequential evaluation. [Doc. 15 at 3]. The Commissioner additionally contends that the ALJ's residual functional capacity ("RFC") assessment is supported by substantial evidence, which included a proper evaluation of Dr. Uzzle's opinion and the Plaintiff's credibility. [Id. at 4-12].

V.   ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

A.   Step Two – Severe Impairments

At step two, the ALJ found that the Plaintiff's degenerative disc disease, anxiety, asthma, diabetes mellitus and diabetic neuropathy, and depression were severe impairments. [Tr. 17]. The Plaintiff argues that the ALJ failed to recognize additional severe impairments, including "abdominal pain, chest pain, anxiety, arthralgia, back pain, cough, decrease in appetite, diabetes mellitus type 2, dizziness, fatigue, fever, [gastroesophageal reflux disease] GERD, headache hyperlipidemia, hypogonadism, insomnia, joint pain, lower back pain, nasal passage blockage, neck pain, and shortness of breath," as well as "chronic bronchitis and chronic sinusitits." [Doc. 13-1 at 5]. The Plaintiff contends that these additional conditions severely affected his ability to do work. [Id.].

The Commissioner maintains that the Plaintiff's argument is without merit because the ALJ considered many of the impairments alleged by the Plaintiff, some of which were found to be severe, and that the Plaintiff also fails to explain how the additional impairments he cites cause limitations beyond those assessed by the ALJ. [Doc. 15 at 4]. Furthermore, the Commissioner points out that the particular impairments found to be severe at step two is

7

"legally irrelevant" since the ALJ continued the sequential evaluation and considered all of the Plaintiff's impairments, both severe and nonsevere, at the remaining steps. [Id.].

At step two, "the ALJ must find that the claimant has a severe impairment or impairments" to be found disabled. Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 88 (6th Cir. 1985). To be severe, an impairment or combination of impairments must "significantly limit[] your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Step two has been described as "a *de minimis* hurdle" in that an impairment will be considered nonsevere "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." Higgs v. Brown, 880 F.2d 860, 862 (6th Cir. 1988) (citing Farris, 773 F.2d at 90).

Here, the Court finds no error by the ALJ at step two for several reasons. First, the ALJ considered many of the impairments complained of by the Plaintiff and even found several of them to be severe. For example, the ALJ considered complaints of chest pain, anxiety, arthralgia, back pain, diabetes, GERD, hyperlipidemia, joint pain, breathing problems, chronic bronchitis, and chronic sinusitits. [Tr. 17-18, 21]. Several of the impairments complained of by the Plaintiff were in fact found to be severe by the ALJ, including the Plaintiff's anxiety, asthma, back problems (*i.e.*, degenerative disc disease), and diabetes. [Tr. 17]. As to the additional impairments alleged to be severe, the Plaintiff does not explain how they significantly limit his ability to perform work activities. While he draws the Court's attention to numerous treatment records from his primary care provider, David Goldman, M.D., in arguing that he suffered from additional severe impairments, the Court observes that the cited records do no more than repetitively note various medical conditions the Plaintiff has been diagnosed with at one time or another. These records do not provide documentation of continuous complaints of or treatment

8

for each noted diagnosis, and therefore fail to demonstrate that that the Plaintiff suffered from additional impairments that significantly limited his functional abilities. See Higgs, 880 F.2d at 863 (explaining that the mere diagnosis of a condition "says nothing about the severity of the condition").

Second, even if the Plaintiff could successfully argue that he suffered from additional impairments that were severe, "the specific severe impairment noted by the ALJ in his step two finding is irrelevant." Hastie v. Colvin, No. 3:13-CV-511-TAV-HBG, 2014 WL 2208942, at *3 (E.D. Tenn. May 28, 2014). The Court of Appeals for the Sixth Circuit has explained that when an ALJ finds some impairments to be severe and continues the sequential evaluation process, as is the case here, it is "legally irrelevant" that other impairments are determined to be nonsevere, because "the ALJ must consider both severe and nonsevere impairments in the subsequent steps." McGlothin v. Comm'r of Soc. Sec., 299 F. App'x 516, 522 (6th Cir. 2008) (citation omitted); see 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity."). Here, the ALJ continued the sequential evaluation by considering all of the Plaintiff's impairments in assessing his RFC. [Tr. 21] ("[T]he undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . . .").

Therefore, the Court finds that the ALJ did not commit reversible error at step two of the sequential evaluation, and the Plaintiff's argument to the contrary is not well-taken.

## B. Consultative Examiner Jeffery Uzzle, M.D.

Next, the Plaintiff argues that the ALJ should have given greater weight to the opinion of Dr. Uzzle.

The Plaintiff obtained an Independent Medical Evaluation from Dr. Uzzle on November 20, 2014, for the purpose of securing an opinion on whether the Plaintiff had the ability to: maintain employment on either a full-time or part-time basis, abstain from missing workdays, maintain a normal workday without interruptions, work at a consistent pace, and work without excessive rest periods. [Tr. 599]. Dr. Uzzle opined that the Plaintiff is not able to work an eight-hour workday in any type of employment, would miss work more than two days per month, could not maintain a normal workday without interruptions, and could not perform work at a consistent pace without an unreasonable number and lengthy periods of rest. [Tr. 601]. Dr. Uzzle based his opinion on the Plaintiff's "complex" "physical and psychological" impairments and conditions. [Id.].

In the disability determination, the ALJ assigned "little weight" to Dr. Uzzle's opinion because he did not provide a functional evaluation of the Plaintiff's abilities. [Tr. 24]. The ALJ found that Dr. Uzzle's opinion only consisted of conclusory statements that the Plaintiff could not work, was speculative, and was a vocational opinion that Dr. Uzzle was unqualified to make. [Id.]. In addition, the ALJ found that Dr. Uzzle's conclusion that the Plaintiff could not work was an issue reserved for the Commissioner's determination. [Id.].

The Plaintiff submits that the ALJ did not provide specific reasons for the weight assigned to Dr. Uzzle's opinion, and that Dr. Uzzle's opinion is more than a vocational opinion, but is a "medical opinion" because it is based upon a complete review of the Plaintiff's medical history. [Doc. 13-1 at 6].

10

The Commissioner counters that Dr. Uzzle's opinion was not a medical opinion because it opined on an issue reserved to the Commissioner, and therefore, the opinion was not due any particular deference. [Doc. 15 at 9].

"Medical opinions" are defined as statements from "acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). While medical opinions from one-time examiners are not due any "special degree of deference," Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994), their opinions must be considered, 20 C.F.R. § 404.1527(b). The weight such opinions are entitled to will depend on the supportability of the opinion, consistency of the opinion with other evidence in the record, specialization of the examining source, and other factors which may support or undermine the opinion. § 404.1527(c)(1)-(6). Moreover, opinions on certain issues, such as whether a claimant is "unable to work," are not medical opinions, "but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." § 404.1527(d), -(1). Accordingly, opinions on issues reserved to the Commissioner are not given any special significance. § 404.1527(d)(3).

In the instant matter, the Court finds the ALJ properly weighed Dr. Uzzle's opinion. With regard to Dr. Uzzle's conclusion that the Plaintiff is not able to maintain any type of employment, the Court finds that the ALJ properly found that the matter was an issue reserved to the Commissioner. See Turner v. Comm'r of Soc. Sec., 381 F. App'x 488, 493 (6th Cir. 2010) ("Dr. Wright's statement that Turner was not 'currently capable of a full-time 8–hour workload' was simply an alternate way of restating his opinion that Turner was 'unable to work.' It was thus an opinion on an issue reserved to the Commissioner and was not entitled to any

11

deference."). As to Dr. Uzzle's findings that the Plaintiff would miss work more than two days per month, could not maintain a normal workday without interruptions, and could not perform work at a consistent pace without an unreasonable number and lengthy rest periods, the Court agrees that these findings are speculative at best. "The better explanation a source provides for an opinion," and the more relevant evidence a source gives to support the opinion, "particularly medical signs and laboratory findings," the more weight the opinion will be given. 20 C.F.R. § 404.1527(c)(3). Here, Dr. Uzzle provided no explanation for his findings other than to say that they are based upon the Plaintiff's physical and psychiatric impairments. Dr. Uzzle's reasoning amounts to conclusory statements that are not entitled to any significant deference. The Court also observes that "the more consistent an opinion is with the record as a whole, the more weight" the opinion will receive. § 404.1527(c)(4). In this case, six other medical sources[1] opined far less restrictive limitations than those found by Dr. Uzzle. [See Tr. 87-94, 108-111, 111-113, 466-67, 607-16, 618-28]. The ALJ assigned great weight to these other opinions [Tr. 24-25] with no objection from the Plaintiff. The Court has not found, and the Plaintiff has not shown, any particular evidence that supports Dr. Uzzle's findings or undermines the ALJ's decision to assign greater weight to these other opinions of record.

The Plaintiff suggests that Dr. Uzzle's opinion was entitled to more weight because he routinely provides consultative examinations on behalf of the Social Security Administration and had reviewed all of the Plaintiff's medical records. [Doc. 13-1 at 6]. While this may well be true, the ALJ "is not bound by conclusory statements of doctors, particularly where they are

---

[1] The additional medical sources include two non-examining state agency physicians, one non-examining state agency psychiatrist, two state agency consultative examiners (a physician and a psychiatrist), and the Plaintiff's treating chiropractor. The Court also notes that Plaintiff's counsel remarked during the first administrative hearing that that he was unable to secure a medical opinion from one of the Plaintiff's doctors "because a lot times the primary care doctors are reluctant to do those." [Tr. 39].

12

unsupported by detailed objective criteria and documentation." Cohen v. Sec'y of Dep't of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (citing King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984)).

Accordingly, the Court finds the Plaintiff's allegation of error in this regard is without merit.

### C. Credibility Determination

Finally, the Plaintiff argues that the ALJ erred in assessing the Plaintiff's credibility.

"In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." Walters, 127 F.3d at 531. Because a claimant's statements as to "pain or other symptoms will not alone establish the [the claimant] is disabled," 20 C.F.R. § 404.1529(a), the Sixth Circuit has articulated the standard for evaluating subjective complaints as follows:

> First, we examine whether there is objective medical evidence in an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Sec. of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986). In regard to this second prong, "adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

In deciding whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain, the ALJ must consider the following factors:

13

(i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, received or have received for relief of pain or other symptoms; (vi) any measures that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

An ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters, 127 F.3d at 531.

Here, the ALJ discounted the Plaintiff's subjective complaints, in part, due to: (1) the Plaintiff's failure to adhere to his primary care provider's advice to stop smoking, and (2) inconsistent statements made by the Plaintiff during the administrative hearings with regard to the need for back surgery. [Tr. 23-24]. The ALJ noted that the Plaintiff was advised to stop smoking due to high blood pressure, but a treatment note from June 2013 revealed that he continued to smoke. [Tr. 23]. The ALJ further noted that during the first hearing, the Plaintiff testified that he presented to a Dr. Fry for back surgery but the doctor declined to perform the surgery because the Plaintiff had too many white blood cells at the time. [Tr. 24]. The ALJ observed that in the second hearing, the Plaintiff denied making any statement with regard to needing "surgery." [Id.]. The ALJ also noted that the record was held open so that the Plaintiff could obtain Dr. Fry's records, but none were submitted. [Id.].

As to the Plaintiff's failure to stop smoking, he argues that subsequent records from other treatment providers reveal that he in fact made an effort to quit smoking. [Doc. 13 at 8] (citing

14

Tr. 587, 596, 607-08). Additionally, the Plaintiff explains that during the second administrative hearing, he clarified that when he said back "surgery," he meant that he was supposed to receive epidural injections but used the term "surgery" because he was going to be "put under." [Id.]. Moreover, the Plaintiff argues that he also clarified during the hearing that Dr. Fry did not perform the procedure due to an infection in the Plaintiff's bloodstream but that Dr. Fry's records did not indicate the reason why the procedure was not performed. [Id.].

The Commissioner maintains that the ALJ properly discounted the Plaintiff's credibility for a number of additional reasons, including non-compliance with other treatment recommendations, the Plaintiff's reported daily living activities, and other inconsistencies noted within the record. [Doc. 15 at 7-8]. With specific regard to the Plaintiff's statements about needing back surgery, the Commissioner argues that in addition to testifying in the first instance that "surgery" was required, the Plaintiff also claimed in a September 2014 disability report that he had been scheduled for back "surgery," which furthers contradicts the Plaintiff's statements to the contrary. [Id. at 8].

With regard to the Plaintiff's alleged inconsistent statements regarding what procedure was required for his back and why it was not performed, the Court observes that Dr. Fry's treatment notes were not made part of the record which precludes the Court from undertaking a meaningful review of the parties' contentions. The Court finds, however, that it need not resolve this conflict because even assuming that the ALJ erred, the error would be found harmless because the ALJ provided a number of other appropriate reasons for discounting the Plaintiff's credibility. See Wilson, 378 F.3d at 546-47 (holding that an ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial

rights because of the [ALJ]'s procedural lapses"). For this same reason, the Court finds that later treatment notes that remark on the Plaintiff's efforts to quit smoking are insufficient to overcome the additional reasons cited by the ALJ for discrediting the Plaintiff's credibility.

The ALJ found that the Plaintiff's daily living activities as described in the Plaintiff's Function Report, Work History Report, and as reported to a consultative examiner in January 2015, negated the severity of the Plaintiff's disabling symptoms and limitations. [Tr. 23] (citing Exhibits 4E, 5E, & 20F). These activities include the Plaintiff's ability to perform personal care needs, mow the yard using a riding mower, driving, going out alone, grocery shopping, going to the movies, managing finances, reading, using the computer, texting on the phone, watching his nephew at the park, and preparing simple meals. [Id.]. A claimant's ability to perform daily activates is one factor that may be appropriately considered in assessing a claimant's subjective complaints of pain. 20 C.F.R. § 404.1529(c)(4)(i). Thus, the ALJ properly recognized that the Plaintiff's reported activities weakened his assertions of disabling symptoms and limitations. See Meuzelaar v. Comm'r of Soc. Sec., No. 15-2341, 2016 WL 2849305, at *3 (6th Cir. 2016) ("Because much of Meuzelaar's 'own testimony suggest[ed] . . . [she] is capable of far more than she asserted,' the parts of her testimony to the contrary undermined her credibility.") (internal citation to the administrative record omitted).

In addition, the ALJ properly considered the Plaintiff's compliance with treatment recommendations. [Tr. 23]. For example, the ALJ observed that the Plaintiff was noncompliant with recommendations of physical therapy to address his complaints of back pain. [Tr. 646]. In addition, the Plaintiff's orthopedist recommended that he follow-up with Dr. Yoakum, a spine specialist, to address complaints of radiculopathy pain. [Tr. 712]. The Plaintiff, however, failed to do so. [Tr. 710, 713]. Moreover, the Plaintiff's primary care provider, Robert Dowell, N.P.,

16

recommended a low sodium diet due to the Plaintiff's high blood pressure, but it was noted that the Plaintiff did not adhere to this advice. [Tr. 391]. Further, Mr. Dowell described the Plaintiff's medication compliance as "fair." [Id.]. It was also noted that the Plaintiff was noncompliant in taking his diabetic medication. [Tr. 394]. The Plaintiff's failure to adhere to medical advice is an appropriate factor that weighs against a favorable credibility finding. See Lawson v. Comm'r of Soc. Sec., 192 F. App'x 521, 527-28 (6th Cir.2006) (upholding a denial of benefits where "the ALJ held that 'Lawson's credibility with respect to her symptoms and impairments in significantly diminished by her failure to follow-up with recommendations of treating physicians to seek psychiatric or mental health treatment [and] failure to take medications as prescribed . . . .'").

Lastly, the ALJ acted appropriately when she discounted the Plaintiff's credibility based upon inconsistent statements within the record. [Tr. 24]. The ALJ observed that the Plaintiff reported selling his heating and air conditioning business in January 2014, but a June 2014 treatment note stated that he still owned the company. [Tr. 551]. The ALJ also cited to a number of statements made by the Plaintiff that were not supported by the record. The Plaintiff testified that his diabetes caused sores on his feet and legs that would not heal, but the medical evidence fails to substantiate the Plaintiff's allegations. The Plaintiff also testified that he was supposed to have knee surgery but that the anesthesiologist would not treat him until his lung doctor cleared him for surgery. [Tr. 55]. However, treatment notes from pulmonologist Rajiv Dhand M.D., and orthopedic surgeon Ryan Dabs, M.D., fail to corroborate the Plaintiff's claim. [Tr. 702-08, 709-716]. Moreover, the Plaintiff testified that he had panic attacks daily along with crying spells. [Tr. 64-65]. In April 2014, however, the Plaintiff requested to be taken off of Xanax because he was "[f]eeling fine now." [Tr. 555]. "Discounting credibility to a certain

degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence." Walters, 127 F.3d at 531

In sum, the Court finds that the ALJ gave numerous other reasons, supported by the record, for determining that the Plaintiff's subjective allegations were not entirely credible. Accordingly, the Court finds that the ALJ's overall credibility determination is supported by substantial evidence, and the Plaintiff's contention to the contrary is not well-taken.

## VI. CONCLUSION

Based upon the foregoing, it is hereby **ORDERED** that the Plaintiff's Motion for Summary Judgment [**Doc. 13**] be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 14**] be **GRANTED.** The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY.

ENTER:

*Bruce Guyton*
United States Magistrate Judge